**Paul W. DAVIS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 11, 1978.

Decided Feb. 2, 1979.

Opinion on Motion for Reargument.

Submitted March 5, 1979.

Decided March 23, 1979.

Nancy Jane Mullen, Asst. Public Defender, Wilmington, for defendant-appellant.

Charles M. Oberly, III, Asst. State Pros., and Edward F. Evans, Deputy Attys. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

In this criminal appeal, we consider whether the State may convict and sentence a defendant for both attempted first-degree robbery and possession of a deadly weapon during the commission of that attempted robbery. We conclude that present Delaware law prohibits such separate prosecutions.

I

These are the pertinent facts:

On March 17, 1977, at the Wilmington train station, Paul W. Davis (defendant) entered a taxicab operated by William H. Kee. Davis asked Kee to take him to a bus station on the Du Pont Highway. En route, Davis told the cab driver to pull over to the side of the road and stop. Kee started to do so. Displaying what appeared to Kee to be a knife, defendant demanded money. Kee refused to comply, told defendant to put the knife away, and again drove down the Highway with defendant still beside him in the cab. As the cab accelerated, Davis appeared to throw something from the vehicle. Kee thought he heard two objects hit the ground.

Kee informed his dispatcher by radio of the incident. With the aid of the dispatcher, the State Police stopped the taxi and apprehended defendant. Kee then led the police to the roadside location where Davis had appeared to throw something from the vehicle. There, police found two knives, but Kee testified at trial that neither of them resembled the knife defendant had displayed in attempting the robbery.[1]

1. Over defendant's objection, the knives were admitted into evidence. We review that ruling later in this opinion.

On these facts, Davis was convicted by a Superior Court jury of attempted first-degree robbery, 11 *Del.C.* §§ 531, 831 and 832, and possession of a deadly weapon during the commission of a felony, 11 *Del.C.* § 1447. The Trial Judge sentenced defendant to a term of three years on the robbery charge and to a term of five years on the weapons charge. The two terms, to run consecutively, are the mandatory minimums required by the respective criminal statutes. Such sentences may not be suspended, nor is defendant eligible for probation or parole during either term.

Defendant appeals on several grounds which we now consider in turn.

## II

The gist of Davis' appeal is that he is being punished twice for one offense. He makes two arguments against the imposition of separate and consecutive sentences for the robbery and weapons charges.

The first argument is a general attack upon the statute which prohibits the possession of a deadly weapon during the commission of a felony, 11 *Del.C.* § 1447. He contends that the weapons offense and the underlying felony are always the "same offense" for the purpose of imposing punishment because proof of one is subsumed in proof of the other, so cumulative imprisonment is never permissible. Defendant's second argument focuses specifically on the offenses charged here, and contends that the weapons statute simply replicates the purpose and effect of the robbery statute, which already takes into account the special circumstance of possessing a weapon. The first argument is grounded on the constitutional bar against double jeopardy, U.S. Const. amend. V; Del.Const. art. I, § 8, while the second relies on an analysis of the Delaware statute, comparable to the kind made in *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), wherein the United States Supreme Court, applying a "policy of lenity," held that in a "prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced under"

separate Federal statutes prohibiting, respectively, armed bank robbery and carrying a firearm during the commission of a felony.

Although we agree that defendant may not be sentenced consecutively in this case, we do not reach the constitutional arguments defendant has made. Cf. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Rather, our decision is based on a construction of the first-degree robbery statute, 11 *Del.C.* § 832.

## III

A brief review of the history of the relevant statutes may be helpful in understanding the present statutory plan and the result in this case.

Prior to the comprehensive revision of the Criminal Code, the crime of robbery was defined and prohibited in 11 *Del.C.* § 811 (1953, Repealed). Robbery was simply the taking of property from the person of another by violence or by putting that person in fear. That definition codified the common law crime of robbery. See Commentary, Delaware Criminal Code (1973), 11 *Del.C.* § 831, p. 257. Robbery was punishable by not less than three nor more than twenty-five years imprisonment.

In 1968, the General Assembly passed the first version of the current weapons statute, 11 *Del.C.* § 1447 (it was then designated as 11 *Del.C.* § 468A). It prohibited the possession of a deadly firearm during the commission of a felony (since changed to punish possession of any deadly weapon, compare 56 Del.Laws ch. 324, § 1, with 58 Del.Laws ch. 497, § 1).

While both the former robbery statute and the weapons statute were in effect, this Court heard appeals in several cases raising the question of whether the State may punish a defendant separately for robbery and possession of a deadly weapon during commission of the robbery. The general conclusion was that separate punishment was authorized and permissible.

In *State v. Honie,* Del.Supr., 310 A.2d 872 (1973), defendants were charged with mur-

der, robbery, assault and possession of a deadly firearm during the commission of those felonies. The Trial Judge granted defendants' pretrial motion to dismiss the weapons counts, holding that the weapons offenses merged into the underlying felonies because the possession of a firearm was a "necessary ingredient" of the principal crimes. This Court reversed, holding that the doctrine of merger of offenses may not be applied before trial to eliminate the weapons offenses because "the principal offenses and the weapon offenses here alleged are separate, clear, and unambiguous statutory offenses, notwithstanding that they arose from the same transactions." 310 *A.2d* at 874. The Court did not find any indication of legislative intent to replace the underlying felonies with the weapons offense. We did, however, suggest that, in some cases, merger of sentences may be appropriate when the weapons offense and the underlying felony arose from the same transaction.

The next case was *Dobrolenski v. State*, Del.Supr., 328 A.2d 447 (1974), in which defendant was charged with robbery and possession of a deadly weapon during commission of the robbery. She contended that *Honie* mandated concurrent sentencing under the weapons statute. This Court, however, held that merger of sentences was not mandatory but, rather, was within the discretion of the Trial Judge.

Subsequent to the decisions in *Honie* and *Dobrolenski*, the General Assembly acted to remove some of the Trial Judge's discretion. Effective January 31, 1976, the weapons statute, 11 *Del.C.* § 1447(c), explicitly forbids concurrent sentencing, and requires that the sentence for the underlying felony be served prior to the mandatory term for possession of a deadly weapon. 60 Del. Laws ch. 306. Then, effective February 2, 1976, the Legislature added a general section to the Code which purports to eliminate concurrent sentencing entirely.[2] 11 *Del.C.* § 3901(d). See 60 Del.Laws ch. 308.

Defendant does not directly challenge the validity of these sentencing statutes, nor do we test them. We do, however, make two observations about them. First, the statutes do not erode the basic holdings of *Honie* and *Dobrolenski*, i. e., that § 1447 and the underlying felony are separate, clear and unambiguous statutory offenses. For most underlying felonies, that remains true, and that is why defendant's first argument must fail.[3] Second, the fact that a Trial Judge no longer has an option to order concurrent sentencing has forced the issue of double punishment in this case. That brings us to defendant's second argument, which focuses specifically on the crime of first-degree robbery.

## IV

The comprehensive revision of the Criminal Code, effective July 1, 1973, sig-

---

2. When originally enacted, the provision forbade concurrent sentencing only for multiple offenses arising from the "same criminal conduct." The current, more general version was made effective on July 14, 1977. 61 Del.Laws ch. 158.

3. The ruling in *Honie* and *Dobrolenski* (that a violation of § 1447 is a separate, clear and unambiguous offense which is not required to be merged with the underlying felony) was confirmed by this Court in *Mackie v. State*, Del. Supr., 384 A.2d 625 (1978). *Honie* and *Dobrolenski* each involved a robbery charge governed by prior statutory law, that is, the statute in effect before July 1, 1973 when 11 *Del.C.* §§ 831, 832 were enacted in the forms construed in this opinion.

The case of *Fullman v. State*, Del.Supr., 389 A.2d 1292 (1978), included a conviction for attempted robbery in the first degree in violation

of the current statute, that is, 11 *Del.C.* § 832. Following *Honie* and *Dobrolenski*, we there restated the rule that when a single transaction produces both a felony and a weapon charge, merger of offenses is not constitutionally required. That ruling was made in response to a contention by defendants, citing *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), (which applied the principle of collateral estoppel to a Federal criminal case) and the guarantees against double jeopardy. The statutory issue, which is decisive here, was not considered nor decided in that case, but the analysis of the robbery statute which we make in this opinion, if made in *Fullman*, would have provided a different ruling in that case. Thus, we must overrule *Fullman* to the extent that any law announced therein is inconsistent with what is said here.

nificantly altered the law of robbery in Delaware. By 58 Del.Laws ch. 497, § 1, the General Assembly split the crime of robbery into two degrees. Now, robbery is presumed to be in the second degree, which is defined as follows:

"§ 831 Robbery in the second degree;

A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to:

(1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or

(2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft."

A class D felony, second-degree robbery has a ten-year maximum sentence and no minimum.

If certain aggravated circumstances are present during second-degree robbery, the crime becomes first-degree robbery; thus:

"§ 832 Robbery in the first degree.[4]

(a) A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

(1) Causes physical injury to any person who is not a participant in the crime; or

(2) Displays what appears to be a deadly weapon; or

(3) Is armed with and uses or threatens the use of a dangerous instrument."

First-degree robbery is a class B felony, punishable by a sentence of three to thirty years. And 11 *Del.C.* § 832(c) prohibits suspension of the minimum sentence and declares persons convicted thereunder ineligible for probation or parole during the minimum term.

In sum, the first-degree robbery statute, on its face, replicates the weapons statute. When it is alleged that a robber displayed a deadly weapon during a robbery, 11 *Del.C.* § 832 requires proof of only two elements:

(1) that defendant committed a felony, namely, second-degree robbery; and

(2) that defendant displayed a deadly weapon.

These are precisely the same elements as the weapons statute.

■ The purpose of the first-degree robbery statute is obvious. It seeks to punish with an enhanced sentence range a person whose use of weapons makes an otherwise less dangerous crime potentially explosive. See Commentary, Delaware Criminal Code (1973), 11 *Del.C.* § 832, pp. 259–260. In other words, the purpose is precisely the same as that of the weapons statute. *Mack v. State,* Del.Supr., 312 A.2d 319 (1973).

■ We conclude that the legislative revision has made the rationale of *Honie* inapplicable to the crime of first-degree robbery. In *Honie,* we said of the old robbery statute and § 1447:

"There is nothing anywhere in the pertinent Statutes to suggest that one statutory offense was intended to be deprived of its status as a basis for prosecution by reason of its relationship to another offense. Indeed, the clear purpose and intent of the Felon Firearm Possession Act is to the contrary."

310 *A.2d* at 874. That cannot be said for the current statutory scheme, for now the first-degree robbery statute duplicates the weapons statute in every significant respect. Thus, while *Honie* and *Dobrolenski* remain good law generally, they have been superseded by the legislation now defining armed robbery.

The two statutes in question have the same design, purpose and effect. Stripped to essentials, both proscribe the same thing: possessing (displaying) a deadly weapon during commission of a felony (second-de-

---

4. When originally enacted, § 832(2) read, "Is armed with a deadly weapon." The current section was substituted by 59 Del.Laws, ch. 547, effective July 26, 1974.

gree robbery). It follows that, as to armed robbery, the General Assembly has defined two indistinguishable crimes, and that it intended to replace the weapons statute, § 1447, with the special aggravated crime of first-degree robbery, § 832.

We hold, therefore, that a defendant who is alleged to have displayed a deadly weapon during a robbery (or attempted robbery) may not be sentenced separately for first-degree robbery (or attempted first-degree robbery) and possession of a deadly weapon during commission of the robbery. See *Simpson v. United States*, supra; *United States v. Busic*, 3 Cir., 587 F.2d 577, aff'd on rehearing on other grounds (1978); *State v. Best*, 70 N.J. 56, 356 A.2d 385 (1976).

■ In this case, defendant was alleged to have attempted a robbery "at knifepoint," so he may not be sentenced to consecutive prison terms for both attempted first-degree robbery and possession of a deadly weapon *during commission of a felony*. Because we have determined that § 832 is indistinguishable from and has replaced § 1447 in cases of armed robbery, defendant's conviction under the weapons statute cannot stand. His conviction for attempted first-degree robbery remains, however, and the case will be remanded to Superior Court for resentencing on that charge. At resentencing, the Trial Judge will not be limited to the mandatory minimum sentence imposed initially for the attempted robbery conviction, but the sentence may not exceed the combined duration of the two terms imposed before this appeal. This limitation appears to comply with the requirements imposed by *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

## V

We turn to defendant's other contentions, which require little comment.

### A.

■ Over defendant's objection, the two knives found on the roadside were admitted into evidence, even though Kee had testi-fied that neither one resembled the knife Davis displayed in attempting the robbery. Kee, however, was positive that defendant did have a knife in the taxi. Because the two knives in question were not evidence necessary to support the attempted robbery conviction, and because Kee's detailed testimony alone is adequate, any error involved in admitting the knives was harmless beyond a reasonable doubt. The admission of such evidence does not affect the conviction for which defendant will be sentenced on remand.

### B.

Defendant also argued that the evidence against him on the weapons charge was insufficient as a matter of law but, in light of the disposition of this appeal, the point is moot.

### C.

■ Davis also contends that he was denied the effective assistance of counsel because his attorney failed to interview Kee prior to trial. Defendant had preserved the point for appeal by moving after the jury verdict for a new trial, which the Trial Judge denied. Defense counsel admits not interviewing Kee prior to trial, but her affidavit implicitly indicates that she used means other than a direct interview of Kee to develop her cross-examination strategy. Under "all the circumstances," defendant was not deprived of effective assistance of counsel, see *Harris v. State*, Del.Supr., 293 A.2d 291 (1972), and the Trial Judge was not "clearly wrong" in denying the motion. See *Isijola v. State*, Del.Supr., 340 A.2d 844 (1975).

\*    \*    \*    \*    \*    \*

Reversed and remanded for proceedings consistent herewith.

## ON MOTION FOR REARGUMENT

DUFFY, Justice:

■ The State has moved for reargument to clarify the relationship of *State v. Smallwood*, Del.Supr., 346 A.2d 164 (1975),

to our determination that the General Assembly intended that 11 *Del.C.* § 832(a)(2) replicate 11 *Del.C.* § 1447.*

In *Smallwood*, we said that

"[p]rior to 1974, § 832(2) provided that one who committed robbery 'armed with a deadly weapon' was guilty of robbery in the first degree. See 59 Del.L., ch. 547. The focus of the statute was on the fact of defendant's condition: was he actually 'armed'? did he have a 'weapon'? was it 'deadly'? In other words, conviction required proof that a defendant was in fact armed with a deadly weapon during the commission of a robbery. A victim's reaction to the confrontation was not significant. Not so, however, under the 1974 amendment.

As we read the statute, the law now considers what takes place from the victim's point of view. Thus, there may be a conviction of robbery in the first degree if a defendant 'displays' what 'appears' to be a deadly weapon. Legislative use of the quoted words is significant because they clearly imply an inquiry into the victim's reaction and not into whether an assailant was in fact armed."

346 *A.2d* at 166.

Briefly, *Smallwood* determined that, in a prosecution under 11 *Del.C.* § 832(a)(2), the State is not required to prove that defendant was actually armed with a deadly weapon during commission of the crime; it is sufficient if the State proves that defendant "displayed" what "appeared" to be a deadly weapon, or that he "intimidate[d] by otherwise manifesting the presence of such a weapon even though it is not seen by the victim." 346 *A.2d* at 167.

█ The State contends that the first-degree robbery statute, § 832(a)(2), does not cover the same ground as the weapon statute, § 1447, because the purpose of the latter is to "discourage the *accessibility* of a deadly weapon during the commission of a crime, thus reducing the probability of serious harm to the victim," *Mack v. State*, Del.Supr., 312 A.2d 319, 322 (1973), (empha-

sis in the original), while the former is designed to punish a robbery committed, not under threat of a gun seen by the victim, but only by the "manifestation" to him of a deadly weapon not seen.

Of course, the purpose of § 1447 is that stated in *Mack*. But in enacting the current version of § 832(a)(2), (which substituted, "Displays what appears to be a deadly weapon"), in lieu of the prior version (which required that defendant have been "armed with a deadly weapon"), the General Assembly did not intend to give the crime of robbery in the first degree the narrow definition for which the State argues. As we understand that contention, a defendant could be convicted of robbery in the first degree only if he displayed what "appeared" to be a deadly weapon, but not if he was in fact armed with a deadly weapon. We refuse to assign such a strange and illogical purpose to what the Legislature did when it adopted the amendment to § 832(a)(2).

As *Smallwood* explains, the focus of the amended law is now on the victim and what is perceived from his point of view, i. e., what is displayed or manifested to him. But nothing in § 832(a)(2) or in *Smallwood* limits the statute's application to a situation in which only the "appearance" of a deadly weapon is somehow manifested, in the absence of the real thing. On the contrary, we think that the Legislature intended to say that a crime is committed (in violation of § 832(a)(2)) if a defendant displayed what was, *in fact*, a deadly weapon. In short, if the object displayed by the robber is in fact that which it appears to be, i. e., a deadly weapon, the conduct is no less criminal and he is guilty of robbery in the first degree. It is unreasonable to ascribe to the General Assembly an intention to limit first-degree robbery to a situation in which there is only the *appearance* of a deadly weapon, and to expect prosecution for second-degree robbery coupled with a weapon charge, under a general statute, § 1447, when a deadly weapon (the real thing) is manifested.

---

* With leave of Court, see Rule 18, defendant filed an answer to the motion.

In our view, the legislative purpose was the same in adopting both § 832(a)(2) and § 1447, namely, to enhance punishment when the criminal is armed with or when he displays what is or appears to be a deadly weapon.

\*     \*     \*     \*     \*     \*

■ The State also seeks a ruling as to whether 11 *Del.C.* § 832(c) relating to sentencing applies to one convicted of an attempted robbery in the first degree under 11 *Del.C.* § 531. That issue was not raised, briefed or argued during the appeal and we decline to consider it on a motion for reargument.

\*     \*     \*     \*     \*     \*

The motion for reargument is denied.