William O. YOUNG, Defendant, Appellant,

v.

STATE of Delaware, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted Sept. 11, 1980.

Decided Oct. 23, 1980.

Submitted on Reargument Dec. 22, 1980.

Decided on Reargument June 15, 1981.

Richard E. Fairbanks, Jr. (argued), Wilmington, for defendant, appellant.

Charles M. Oberly, III, Deputy Atty. Gen. (argued), Wilmington, for plaintiff, appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

PER CURIAM:

William O. Young (defendant) was convicted in the Superior Court of Murder in the Second Degree, in violation of 11 *Del.C.* § 635, and Possession of a Deadly Weapon During Commission of a Felony, in violation of 11 *Del.C.* § 1447; he was separately sentenced for each offense. He appeals, arguing from several premises which we consider *seriatim.*

I

It is undisputed that Leon Wilson was shot to death at about 7:30 in the evening on the street or sidewalk adjacent to a bar in the City of Wilmington. Defendant was charged with the homicide. At trial he denied committing the crime.

## II

The State's principal witness was one Leo Tolliver who was granted immunity, 11 *Del.C.* § 3506, immediately before he gave his testimony. Bayard Snyder, Esquire, represented Tolliver; he was present in the courtroom when immunity was granted and, indeed, participated in the proceeding as counsel. At the conclusion of that phase of the case, Mr. Snyder advised the Court that he (himself) was expecting to be "called as a witness in this case" by the defense. On the record, Tolliver then waived his client-attorney privilege.

Thereafter, Snyder remained in the courtroom while Tolliver testified for the State. At the conclusion of Tolliver's testimony, the State then called Snyder as a witness, largely for the purpose of corroborating what Tolliver had told the jury. Defendant objected to any testimony by Snyder on the ground that it would violate a (witness) sequestration order which the Trial Judge had entered, on the State's motion, before the evidentiary part of the trial began. The Court overruled the objection and permitted Snyder to testify.

■ The question of whether witnesses are to be sequestered and exceptions thereto are matters within the discretion of the Trial Judge. *Holmes v. State*, Del.Supr., 422 A.2d 338 (9/25/80); *Grace v. State*, Del.Supr., 314 A.2d 169 (1973). Here the State failed to request that Snyder be excepted from the sequestration order so his testimony violated that order. Nonetheless, such a violation does not, without more, render a witness incompetent, absent a "showing that the rule was violated through consent, connivance or procurement of the party calling the witness ...." *Derrickson v. State*, Del.Supr., 321 A.2d 497, 500 (1974).

We conclude that the Trial Judge did not abuse his discretion in permitting Snyder to testify. Both parties knew that he expected to be called as a witness by defendant. During Tolliver's testimony Snyder had a right to be in the courtroom (with his client), see 1 *Wharton's Crim. Evid.* (13 ed.) § 405, but neither party had suggested that

Snyder testify before Tolliver was heard by the jury. The fact that the State called him and that defendant did not call him does not require a reversal on the ground of abuse of discretion. Compare *Derrickson v. State*, Del.Supr., supra.

■ Young's second argument is that the Trial Judge erroneously admitted certain testimony relating to the "code of the waterfront." Defendant, the witness Tolliver and another witness called by the State, Charles Harris, were all longshoremen who worked on the waterfront. On direct examination, Harris testified about his fear of giving testimony against Young because he might be blacklisted from work on the waterfront and his "safety" might be in jeopardy. The apparent purpose of the testimony was to provide support for what Harris was saying. The evidence did not connect Young with those fears.

In the absence of evidence connecting defendant with "threats" to a witness, testimony as to such matters is generally not admissible, *State v. Sorbo*, Conn.Supr., 174 Conn. 253, 386 A.2d 221, 223 (1978), and authorities cited therein. But here, the evidence as to the "code" was not a threat in the sense that it tended to show a consciousness of guilt on Young's part. Rather, the testimony was general as to a standard or norm about the relationship of Young, Harris and others who worked as longshoremen out of the same union hall.

In retrospect, it seems to us that the better practice would have been to reject the testimony. But, given the broad discretion a Trial Judge on the scene must have in controlling the trial, we cannot say as a matter of law that admission of the testimony was reversible error. *Thompson v. State*, Del.Supr., 399 A.2d 194 (1979). And the question of whether or not there was such a "code" was itself in dispute and the jury could make its own judgment about that.

■ Defendant also argues that the Trial Judge should have granted his motion for a mistrial, based upon the admission into evidence, during cross-examination, of certain

testimony pertaining to shotgun shells. Defendant says that the State's questioning extended beyond the permissible scope of cross-examination and that the testimony was evidence of a prior crime which is clearly inadmissible to prove commission of the offense in issue. Compare *Casalvera v. State*, Del.Supr., 410 A.2d 1369 (1980), with *Johnson v. State*, Del.Supr., 311 A.2d 873 (1973). We have reviewed the trial transcript and, even assuming that defendant did not, during his direct testimony, open the door to the State's inquiry on cross-examination, we conclude that although the Court gave no cautionary instruction to the jury, the Trial Judge did not abuse his discretion in denying the motion for a mistrial. *Thompson*, supra, 399 A.2d at 199.

Defendant also argues that a search of the premises at which he lived, which was authorized in a judicially issued warrant, was erroneous as a matter of law because it was based on a defective affidavit. He makes two points: first, the affidavit does not show that the hearsay information contained therein was reliable and, second, taken as a whole, the affidavit does not contain sufficient facts to demonstrate probable cause that the items sought would be found at his residence.

As to the reliability contention, we have examined the supporting affidavit and for warrant purposes, at least, it was permissible to regard Tolliver as a citizen informant and hence corroboration of his statement was unnecessary, *Sexton v. State*, Del. Supr., 397 A.2d 540 (1979), but the police investigation provided some support for it.

As to the place to be searched, the affidavit shows that the police investigation indicated that the victim had been shot by a "small calibre handgun," which corroborated Tolliver's statement that he had seen Young at the murder scene holding "what appeared to be a small automatic handgun." Given the additional information in the affidavit as to Young's residence and his presence there within a few hours after the homicide, we conclude that there was probable cause to authorize the search of his residence. *Wilson v. State*, Del.Supr., 314 A.2d 905 (1973).

Finally, defendant argues, strongly, that the summation by the Attorney General in closing to the jury was grossly unfair and beyond the bounds of permissible comment. In brief, the prosecutor suggested to the jury that it should return a verdict that it could justify to a neighbor after the case had ended.

In our view the statements were improper and should not have been made. *Sexton*, supra, 397 A.2d at 544, 545. Certainly the prosecutor should not have attempted to get the jurors to consider the evidence in light of how each of them would explain the verdict to their respective neighbors. But the question is whether the mistake amounts to reversible error.

We note, first, that the prosecutor's comments were not objected to while they were being made, nor at the conclusion of the summation. Indeed, no objection of any kind was raised before the Trial Judge. Hence, there was not an opportunity for any corrective action on the Court's part. In the absence of objection, see Annot., 85 *A.L.R.2d* 1132, 1141, we are not persuaded that we should apply the plain error rule. See Supreme Court Rule 8 and D.R.E. 103(d). And we also note that the Trial Judge, as part of his instructions, told the jury that they must "decide the case only from the evidence which is properly before . . . [them] according to the Court's instructions."

## II

Turning now to the weapon charge, the principles recently announced by this Court in *Evans v. State*, Del.Supr., 420 A.2d 1186 (9/8/80), and *Hunter v. State*, Del. Supr., 420 A.2d 119 (6/24/80), control and, therefore, the separate sentence imposed for each offense cannot stand. It follows that the case must be remanded for proceedings consistent with the rulings in *Evans* and *Hunter*.

The conviction on each charge is affirmed but the sentences are vacated and the case is remanded for sentencing and other proceedings consistent herewith.

Upon motion for reargument. Motion denied.

PER CURIAM:

On October 23, 1980, this Court filed an opinion affirming the convictions of William O. Young (defendant) in the Superior Court of Murder in the Second Degree, in violation of 11 *Del.C.* § 635, and Possession of a Deadly Weapon During Commission of a Felony, in violation of 11 *Del.C.* § 1447. *Young v. State,* Del.Supr., 431 A.2d 1252 (1980). We also ruled that the separate sentences imposed for each offense could not stand, and a remand was ordered for proceeding consistent with the rulings in *Hunter v. State*, Del.Supr., 420 A.2d 119 (1980), and *Evans v. State*, Del.Supr., 420 A.2d 1186 (1980).

A stay of the remand was ordered thereafter on the State's application.

The rulings in *Hunter* and *Evans* on which the panel relied in the October 23, 1980 opinion have now been abandoned by this Court, sitting *en banc*, for the reasons stated in *Hunter v. State*, Del.Supr., 430 A.2d 476 (1981), and *Evans v. State*, Del. Supr., 430 A.2d 481 (1981). For the reasons stated in those opinions, Section II of this Court's October 23 opinion is vacated and the separate sentences imposed for each offense in this case are affirmed.